**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094 <br><br> THIS DOCUMENT RELATES TO ALL CASES <br><br> JUDGE KAREN SPENCER MARSTON |
| CRYSTAL ROSENBAUM, <br><br> Plaintiff(s) <br><br> v. <br><br> ELI LILLY AND COMPANY and LILLY USA, LLC, <br><br> Defendants. | COMPLAINT AND JURY DEMAND <br><br> CIVIL ACTION NO.: ___2:26-cv-04239___ |

**SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff named below, by and through the undersigned counsel, files this *Short-Form Complaint and Demand for Jury Trial* against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, and any subsequent amended versions of such Master Complaint, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this *Short-Form Complaint* as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

1

## **IDENTIFICATION OF PARTIES**

### **Plaintiff(s)**

1. Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s):

Crystal Lynn Rosenbaum
.

2. If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: _____,

as _____ of the estate of _____, deceased.

3. If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): _____.

4. If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: _____.

### **Defendant(s)**

5. Plaintiff(s)/Decedent's Representative is/are suing the following Defendant(s) (check all that apply):

- [ ] Novo Nordisk Inc.
- [ ] Novo Nordisk A/S
- [X] Eli Lilly and Company
- [X] Lilly USA, LLC
- [ ] other(s) (identify): _____

## JURISDICTION AND VENUE

6.    City and state of Plaintiff(s)' current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence):

21331 Gladis Ave, Port Charlotte, FL 33952 United States

7.    State where Plaintiff/Decedent was prescribed the GLP-1RA Product(s) at issue:

Florida

8.    State of Plaintiff's/Decedent's residence at time of their use of the GLP-1RA Product(s) at issue:

Florida

9.    City and state of Plaintiff(s)'/Decedent's residence at time of diagnosis of injury:

Port Charlotte, FL

10.    Jurisdiction is based on:

[ X ]    diversity of citizenship pursuant to 28 U.S.C. § 1332

_____    other (plead in sufficient detail as required by applicable rules):

_____

_____

11.    The District Court(s) where Plaintiff(s) might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

United States District Court - Middle District of Florida

12.    Venue is proper in the District Court identified in Paragraph 11 because:

[ X ]    a substantial part of the events and omissions giving rise to Plaintiff(s)' claims occurred there

_____ other (plead in sufficient detail as required by applicable rules):

_____

_____

13.    If applicable, identify the citizenship of any additional Defendant(s) named above:

_____

**PRODUCT USE**

14.    Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):

- [ ] Ozempic (semaglutide)
- [ ] Wegovy (semaglutide)
- [ ] Rybelsus (oral semaglutide)
- [ ] Victoza (liraglutide)
- [ ] Saxenda (liraglutide)
- [ ] Trulicity (dulaglutide)
- [ ] Mounjaro (tirzepatide)
- [X] Zepbound (tirzepatide)
- [ ] Other(s) (specify): _____

15.    To the best of Plaintiff(s)' knowledge, Plaintiff/Decedent used GLP-1 RA Product(s) during the following approximate date range(s) (month(s) and year(s)) (if multiple products, specify date range(s) for each product):

Zepbound: 1/2025 – 5/2025

**INJURIES AND DAMAGES**

16.    To the best of Plaintiff(s)' knowledge, as a result of using GLP-1 RA Product(s),

Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

[X] Gastroparesis

[ ] Other gastro-intestinal injuries (specify) _____

[ ] Ileus

[ ] Ischemic Bowel/Ischemic Colitis

[ ] Intestinal Obstruction

[ ] Necrotizing Pancreatitis

[ ] Gallbladder Injury (specify) _____

[ ] Micronutrient Deficiency

[ ] Wernicke's encephalopathy

[ ] Aspiration

[ ] Death

[X] Additional/Other(s) (specify): | Severe and Prolonged Vomiting |

17.    Plaintiff's/Decedent's injuries occurred in approximately (month and year)?

| Severe and Prolonged Vomiting: April 2025 |

| Gastroparesis: May 2025 |

| |

| |

6

18.    In addition, as a result of Plaintiff's/Decedent's use of GLP-1 RA Product(s), Plaintiff(s) suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

- [X] Injury to self
- [ ] Injury to person represented
- [X] Economic loss
- [ ] Wrongful death
- [ ] Survivorship
- [ ] Loss of services
- [ ] Loss of consortium
- [ ] other(s) (specify): _____

## CAUSES OF ACTION

19.     In addition to adopting and incorporating by reference the Master Complaint as stated above, more specifically, Plaintiff(s) hereby adopt(s) and incorporate(s) by reference the following Causes of Action and allegations asserted in the Master Complaint (check all that apply):

[X] Count I:     Failure to Warn – Negligence

[X] Count II:    Failure to Warn – Strict Liability

[X] Count III:   Breach of Express Warranty/Failure to Conform to Representations

[X] Count IV:    Breach of Implied Warranty

[X] Count V:     Fraudulent Concealment/Fraud by Omission

[X] Count VI:    Fraudulent/Intentional Misrepresentation

[X] Count VII:   Negligent Misrepresentation/Marketing

[X] Count VIII:  Strict Product Liability Misrepresentation/Marketing

[X] Count IX:    Innocent Misrepresentation/Marketing

[X] Count X:     Unfair Trade Practices/Consumer Protection (see below)

[X] Count XI:    Negligence

[X] Count XII:   Negligent Undertaking

[ ] Count XIII:  State Product Liability Act (see below)

[ ] Count XIV:   Wrongful Death

[ ] Count XV:    Loss of Consortium

[ ] Count XVI:   Survival Action

[ ] Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules):

_____

_____

_____

_____

20.     If Plaintiff(s) is/are asserting a claim pursuant to the unfair trade practices or

consumer protection statutes of any jurisdiction as identified in Count X above:*

      a.   Indicate the specific statute (including subsections) under which Plaintiff(s)

        is/are bringing such claims:

| Fla. Stat. § 817.06 |
|---|

| Fla. Stat. § 817.41(1) |
|---|

| Fla. Stat. § 817.41(6) |
|---|

      b.   Identify the factual allegations supporting those claims (by subsection, if

        applicable):

| See attachment "A" |
|---|

_____

_____

*Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21.     If Plaintiff(s) is/are asserting a claim pursuant to the Product Liability Act

("PLA") of any jurisdiction as identified in Count XIII above:*

     a.  Indicate the specific statute (including subsections) under which Plaintiff(s)

       is/are bringing such claims:

|  |
|--|
|  |

|  |
|--|
|  |

|  |
|--|
|  |

     b.  Identify the legal theories identified in Paragraph 19 above (*e.g.*, negligent

       failure to warn, fraud, etc.) that are subsumed within Plaintiff(s)' PLA claim:

|  |
|--|
|  |

|  |
|--|
|  |

|  |
|--|
|  |

     c.  Identify the factual allegations supporting those claims:

|  |
|--|
|  |

|  |
|--|
|  |

|  |
|--|
|  |

*\* Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22.     If pre-suit notice is required by statute, did Plaintiff(s) provide some form of

separate pre-suit notice to Defendant(s)? N/A .  If so, attach such notice.

10

## **RELIEF**

Plaintiff prays for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the *Master Complaint*, as appropriate, and any additional relief to which Plaintiff may be entitled.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.

Date: June 18, 2026

By: /s/ *Scott A. Bursor*

Scott A. Bursor

Bursor & Fisher, P.A.

701 Brickell Ave, 2100

Miami, FL 33131

ozempic@bursor.com

305-330-5512

Name(s), Bar Number(s), Law Firm(s), Mailing Address(es), Email Address(es), and Phone Number(s) of Attorney(s) representing Plaintiff(s).

**ATTACHMENT "A"**
**UNFAIR TRADE PRACTICES / CONSUMER PROTECTION SUPPLEMENT**

1.      Plaintiff incorporates by reference the factual allegations in the Master Complaint and its paragraphs 850-65 as though set forth fully at length herein.

2.      Plaintiff brings this claim against the Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants").

3.      Plaintiff brings this claim under the statute, and relevant subsections, identified in Paragraph 20(a) of the Short Form Complaint (the "Statutes").

4.      The Florida False Advertising statute was created to protect consumers from untrue, deceptive, and misleading advertisements. Fla. Stat. §§ 817.06, 817.41.

5.      Plaintiff and/or Defendants are "persons" under the Statutes.

6.      Plaintiff is a consumer who purchased one or more GLP-1 RA Products for personal, family, and/or household purposes.

7.      Defendants are the suppliers, manufacturers, advertisers, and/or sellers of the GLP-1 RA Products, subject to liability under the Statute for fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

8.      Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce, and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiff, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products.

9.      Defendants marketed and advertised the GLP-1 RA Products to consumers, physicians, and other healthcare entities in Florida. In addition, Defendants sold the GLP-1 RA

1

Products to residents of Florida; shipped GLP-1 RA Products to Florida; and otherwise engaged in trade or commerce, or conducted business, related to the GLP-1 RA Products in Florida. Defendants' misconduct described herein significantly affected Florida consumers.

10. As alleged in the Master Complaint, Defendant engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the Statute by, among other things:

   a. Misleading consumers regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits and understating risks from using the GLP-1 RA Products;

   b. Excessively advertising, marketing and overpromoting their GLP-1 RA Products, including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign with use of telehealth providers and promoting the drugs off-label; and

   c. Failing to disclose that they performed research and testing in a manner that would lead to under-reporting of the severe risks of using the GLP-1 RA Products.

11. As described in the Master Complaint, including in the paragraphs cited in paragraph 856 of the Master Complaint as well as paragraphs 447 through 576 of the Master Complaint, at all relevant times, Defendants knew or should have known, including from preclinical trials, premarket clinical trials, post-market surveillance, adverse event reports, and published scientific papers, that the GLP-1 RA Products posed serious health risks to users. Despite this knowledge, Defendants continued to mislead consumers by omitting, understating, or downplaying risks associated with use of their GLP-1 RA Products.

12. As described in the Master Complaint, including in paragraphs 577 through 601 of the Master Complaint, at all relevant times, Defendants knew or should have known that their GLP-1 RA Products are not as effective for weight loss as Defendants claimed. Despite espousing significant weight-loss benefits, Defendants knew that the average person loses only a

2

small percentage of their body weight while on GLP-1 RA Products, a significant percentage of patients experience minimal to no weight loss, many people stop taking GLP-1 RA Products relatively quickly, and many people who discontinue use gain back as much as , or more than, the weight they lost while using the GLP-1 RA Products. Despite this knowledge, Defendants continued to mislead consumers by overstating the products' weight-loss benefits.

13.     The information referenced above that Defendants misrepresented, concealed and did not disclose, was material. A reasonable person, including Plaintiff, would find that information, which was related to their health and well-being, such as the serious adverse health risks associated with the use of the GLP-1 RA Products and the limits of the products' efficacy, to be important when deciding whether to purchase and/or use the GLP-1 RA Products.

14.     Defendants intentionally concealed the foregoing material information from consumers, users, prescribers, physicians and other health care providers, including Plaintiff and Plaintiff's health care providers, because to do otherwise would have resulted in fewer prescriptions written for, and fewer purchases of, the GLP-1 RA Products.

15.     Defendants violated the Statutes by failing to disclose the material health and safety information regarding the GLP-1 RA Products discussed above to consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

16.     Defendants violated the Statutes by making numerous representations about the weight-loss benefits of taking GLP-1 RA Products while concealing additional information related to the purported weight-loss benefits from consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of

3

Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

17.     Prior to being prescribed and using the GLP-1 RA Products, Plaintiff did not receive adequate warnings regarding the risk of severe gastrointestinal injury, including severe and prolonged vomiting and exacerbation of gastroparesis. Plaintiff relied on Defendants' representations and omissions regarding the safety and tolerability of these products, as conveyed through her prescribing healthcare providers and the general marketing and labeling of the drugs. Plaintiff would not have used these products had the true risks been disclosed.

18.     Plaintiff was prescribed and used GLP-1 RA Products, including Zepbound (tirzepatide), based on Defendants' representations regarding their safety and efficacy. Following administration of tirzepatide, Plaintiff experienced severe and prolonged vomiting beginning approximately two weeks before her first hospitalization. On or about May 14, 2025, Plaintiff presented to HCA Florida Fawcett Hospital with hematemesis, dehydration, and acute kidney injury and was admitted for inpatient treatment. Plaintiff's gastroparesis and other serious gastrointestinal complications were substantially exacerbated by her use of GLP-1 RA Products, which are known to delay gastric emptying and can cause or worsen gastroparesis and severe vomiting. Plaintiff's treating physicians identified her GLP-1 RA use as a contributing cause of her condition and documented that her vomiting was suspected to have been exacerbated by tirzepatide use.

Plaintiff required inpatient management, including intravenous fluid treatment for dehydration and acute kidney injury, as well as close clinical monitoring. Her vomiting episodes were recurrent and required additional interventions, including discontinuation of tirzepatide and administration of pyloric Botox injections to improve gastric emptying. A gastric emptying study

performed on or about May 27, 2025 confirmed ongoing gastroparesis. Despite these interventions, Plaintiff's gastrointestinal injuries have persisted. Because her symptoms failed to resolve following the pyloric Botox injection, her treating gastroenterologists escalated her treatment to a chronic dual-medication regimen, including metoclopramide (Reglan) 10 mg twice daily and Linzess (linaclotide) 72 mcg daily, to manage persistent gastroparesis, impaired gastric motility, and severe slow-transit constipation. Plaintiff remains under active treatment for these conditions.

As a direct consequence of her severe gastric dysmotility and chronic gastrointestinal dysfunction, Plaintiff has also suffered significant neurocognitive and psychiatric injuries. Her impaired gastric emptying and inability to reliably consume and absorb food disrupted the effectiveness of Geodon (ziprasidone), a medication that requires administration with food for proper absorption and therapeutic effect, resulting in destabilization of her previously managed psychiatric condition and necessitating additional medical treatment and monitoring.

As a further consequence of Defendants' products, Plaintiff sustained acute kidney injury resulting from prolonged dehydration and vomiting. Although her renal function partially recovered, Plaintiff has since been diagnosed with Stage 2 Chronic Kidney Disease (ICD-10 N18.2), which remains an active and permanent medical condition. Plaintiff's treating physicians have advised that she must avoid nephrotoxic medications and that future medications require renal dosing considerations due to her diminished kidney function. Plaintiff remains under ongoing medical care and surveillance for gastroparesis, chronic gastrointestinal dysfunction, chronic kidney disease, neurocognitive and psychiatric complications, and related injuries. Plaintiff has suffered severe and permanent injuries, has incurred substantial medical expenses, has experienced pain and suffering, and will continue to require medical treatment and monitoring as a direct and proximate result of her use of Defendants' GLP-1 RA Products.

19.     Defendants knew that the misrepresentations, omissions and concealment of material safety and efficacy information in the GLP-1 RA Products' packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures rendered them false, deceptive, inadequate, and misleading.

20.     In violation of the Statutes, through a pervasive pattern of false and misleading statements and omissions to health care providers and consumers, Defendants engaged in unlawful intentional conduct by overstating benefits of GLP-1 RA Products and omitting or downplaying side effects and complications of the products.

21.     In violation of the Statute, Defendants' conduct described herein constitutes the knowing and willful act, use, or employment of deception, false promise, misrepresentation, and unfair practices, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of goods, merchandise and/or consumer merchandise (*i.e.*, the GLP-1 RA Products), in trade or commerce, and was done with the intention that consumers such as Plaintiff would rely upon such conduct in purchasing or using the GLP-1 RA Products.

22.     Defendants' conduct was fraudulent and deceptive because the material misrepresentations and omissions had the capacity or tendency to deceive and, in fact, did deceive reasonable consumers, including Plaintiff.

23.     Plaintiff justifiably relied on Defendants' misrepresentations and omissions. If Plaintiff had known the information that Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

24.     As a result of such deceptive packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures, Plaintiff purchased and/or used the GLP-1 RA Products in justifiable and reasonable reliance on Defendants' misrepresentations

6

and omissions.  Defendants expected or should have expected reasonable consumers to rely on these misrepresentation and omissions, in part, because the omitted information directly relates to consumers' health and well-being.

25.    Plaintiff at all times acted as a reasonable consumer in relying upon Defendants' misrepresentations and material omissions concerning Defendants' GLP-1 Products in choosing to purchase and/or consume the GLP-1 RA Products prescribed by their health care provider.

26.    The actions and omissions of Defendants are uncured or incurable.

27.    As alleged above, Defendants had actual knowledge of the defective and dangerous condition of the GLP-1 RA Products and failed to take any action to cure those conditions.

28.    As a direct and proximate result of Defendants' misconduct described herein, Plaintiff has suffered serious injuries, economic and non-economic losses, and other damages, including hospitalization, medical expenses, and ongoing health complications. Accordingly, pursuant to the Statute, Plaintiff seeks statutory, exemplary, treble, and/or punitive damages, costs of suit, attorneys' fees, and all other relief deemed appropriate.

29.    The related Florida statutes governing deceptive or misleading conduct, including Fla. Stat. §§ 817.41 and 817.06, do not impose any pre-suit notice requirement.